## John Isaacs v. William Willis, Assignee, etc.

*On a Caveat for 372¼ Acres of Land.*

The plaintiff on the 29th day of November, in the year 1786, entered the following caveat, to-wit:

"Let no grant issue to William Willis, assignee of Lewis Craig, assignee of Christopher Hudson, for 372¼ acres of land, surveyed by virtue of part of a military warrant, No. 248, lying and being in the county of Lincoln, because John Isaacs claims the same by virtue of an entry made on a pre-emption treasury warrant."

On the 8th day of February, 1780, the plaintiff, John Isaacs, obtained from the commissioners for the district of Kentucky, the following certificate, to-wit:

"John Isaacs, by Col. Bowman, this ·day claimed a settlement and pre-emption to a tract of land in the district of Kentucky, on account of settling in the country in the year 1777, and residing twelve months since, the said settlement lying on both sides of Wilson's run, adjoining the lands of Thomas Wilson below, and to· include his improvement. Satisfactory proof being made to the court, they are of opinion that the said Isaacs has a right to a settlement of 400 acres of land, to include the above location, and the

pre-emption of 1,000 acres adjoining, and that a certificate issue accordingly."

And on the 21st day of February, in the year 1780, entered his settlement with the surveyor, in the following words, to-wit:

"John Isaacs enters 400 acres, by virtue of a certificate, etc., on both sides of Wilson's run, adjoining the lands of Thomas Wilson, below, to include his cabin and improvement." And also entered his pre-emption warrant on the 21st day of December, in the year 1781, with the surveyor, in the following words, to-wit:

"John Isaacs enters 1,000 acres of land upon a pre-emption warrant, No. 1619, adjoining and around his settlement, lying on Wilson's run." And on the 27th day of June, in the year 1786, made the following amendment to his pre-emption entry, to-wit:

"John Isaacs offers the following explanation to his pre-emption entry of 1,000 acres, made the 22d day of December, 1781, and to stand in the following manner: Whereas it is impracticable for the pre-emption to lay off round the said Isaacs' settlement, on account of prior claims, therefore he extends the body of the land east, so as to join the 400 acre pre-emption Stephen Fisher sold Barbee on the north, and passing the north-east corner of the said pre-emption, continuing the course east 30 poles, to a white oak, walnut and sugar tree, a corner to William Gaines' land, and with a line of his land north 195 poles, or to another of said Gaines' corners, at a walnut, cherry and Spanish oak, thence to extend west, to join the original part of his entry."

William Willis, the defendant, on the 24th day of April, in the year 1780, made the two following entries of 400 acres each, with the county surveyor, to-wit:

"William Willis, assignee of Lewis Craig, who was assignee of Christopher Hudson, enters 400 acres in Kentucky, by virtue of a warrant for military services performed by said Hudson in the last war, including a spring on the south side of Dick's river, that falls into a sink hole, after running a small distance, about one mile from George Teator's claim, to run up and down the spring branch for quantity." "Also, 400 acres on the south side of Dick's river, including a spring that runs from under a large rock, about 1½ miles from said Teator's, near a south course, to run down the said spring branch for quantity."

And on the 26th day of June, in the year 1786, the said William Willis made the following amendment to the second of the said two entries, to-wit:

"William Willis, assignee of Lewis Craig, assignee of Christopher Hudson, withdraws his second entry of 400 acres, made on part of a military warrant, No. 248, the 24th day of April, 1780, including a spring that runs from under a large rock, about one and a half miles from said Teator's, near a south course, etc., and enters the aforesaid 400 acres, being part of the military warrant, No. 248, and assigned as above, to begin at the north-east corner of Stephen Fisher's pre-emption of 1,000 acres, it being his pre-emption that adjoins the settlement whereon the said Fisher now lives, at a Spanish oak, sugar tree, and elm, thence with Fisher's pre-emption line, west 178 poles, thence north, 315 poles; thence east, so far that running south 220 poles, thence west and south 95 poles, will strike the beginning and include 400 acres of land."

The annexed plat, No. 8, was returned in this cause, of which the following is an explanation:

A, John Isaacs' improvement. B C D E, John Isaacs' settlement of 400 acres, as surveyed. D F G H I K L M C, part of John Isaacs' pre-emption of 1000 acres as surveyed. The black lines represent John Isaacs' settlement and pre-emption, laid down according to the interlocutory judgment. 1 2 3 4 5, part of Stephen

Fisher's pre-emption. 3 4 5 6 7 8, William Willis' survey of 372½ acres.

The court at the last June term, pronounced the following interlocutory judgment, to-wit:

The plaintiff ought to have surveyed his settlement in a square form, so as to adjoin Wilson's land below, and also so as to be divided into two equal parts, by a line to be run parallel to Wilson's run, and half way between the said run and the plaintiff's cabin; and his pre-emption according to his original location ought to have been surveyed around his settlement on the north, east and south sides, the lines at equal distance from those sides of the settlement. But at this term it appearing by the surveyor's report, that the plaintiff's pre-emption as directed to be laid down did not interfere with the defendant's survey, the court dismissed the plaintiff's caveat with costs, etc.